In the Matter of the Petition of HENRY G. TREVOR, Appellant, for the Construction of the Will of JOHN B. TREVOR, Deceased.

EMILY H. TREVOR and Others, Respondents.

Second Department, January 11, 1924.

Wills — testamentary trust — testator devised personal property in trust for benefit of widow with direction that on her death corpus should be disposed of for benefit of her children by adding same to their shares in residuary estate — residuary estate was devised in trust for benefit of children with provision that corpus should be paid over when they reached certain age but with discretion to withhold one-fifth thereof for life of children — will also provided that in case of death of child with issue his share should be held in trust for children during minority and in case of death without issue share should be added to shares of other children — devise in trust for benefit of widow was invalid as suspending absolute ownership for more than two lives in being — children's interest in property devised in trust for widow was not vested — corpus of trust for benefit of widow, upon her death became intestate property.

A devise of personal property in trust for the benefit of the widow of the testator for life violates the provision against the suspension of absolute ownership for more than two lives in being, where it appears that the will in reference to the widow's trust provided that upon her death the corpus of the trust should be disposed of

for the benefit of her children by adding the same in equal parts to the several shares representing her children in the residuary estate and that the residuary estate was devised in trust for the benefit of the children with directions to the executors to divide the residuary estate into equal shares to represent the children and to hold and invest each share and apply the income to the support of each child until such child should attain twenty-one years of age and thereafter to apply the whole income to the share representing such child to his use and when each child reached a stated age to pay over the corpus of each share to the child, but with discretion in the executors to withhold payment of one-fifth of the corpus of each share during the life of any child, and which contained a further provision that if a child should die without issue his share should be added to the shares of the other children proportionately, and if he should die with issue his share should be held in trust until such issue should attain the age of twenty-one years.

The validity of the will is to be determined by what might have happened, and, under the provisions recited, the will provided for the supension of absolute ownership during the life of the wife and during the life of any child in case the one-fifth interest was withheld, and in the event of the death of the child with issue, then the absolute ownership was further suspended for the further period of minority of the issue which would constitute a suspension for two lives and for the period of minority of the issue of any child dying with issue, and in case the child died without issue the possible suspension might extend to five lives.

The life estates of the children in the widow's trust were not vested at the time of the death of the testator, since the will provides that the corpus of that trust is not to be added to the children's trust until the death of the widow, and, therefore, the attempted devise of the corpus of the life estate after the death of the widow is invalid and as to that part of the estate the testator died intestate.

YOUNG, J., dissents, with opinion.

APPEAL by the petitioner, Henry G. Trevor, from so much of a decree of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 30th day of January, 1922, as holds valid a trust created by the will of John B. Trevor, deceased. (See *Matter of Trevor*, 120 Misc. Rep. 22.)

The testator died December 22, 1890, leaving an estate of upwards of $10,000,000. He was survived by his second wife, Emily N. Trevor, and *four* children, one by his first wife, Henry G. Trevor, the appellant, and *three* by his second wife, Mary T., Emily H. and John B., Jr., all of whom were at that time infants. Mary T., who married, predeceased her mother, Emily N., who died in July, 1922. There are now also living several grandchildren and great grandchildren of the testator.

*Charles A. Towne* [*Henry A. Forster, Henry J. O'Neill* and *C. C. Daniels* with him on the brief], for the appellant.

*George W. Wickersham* [*Francis Smyth* with him on the brief], for the respondents Emily H. Trevor and others.

*J. Edwards Wyckoff* [*John F. Devlin* and *James Morrow* with him on the brief], for the respondents John A. Stewart and the United States Trust Company of New York, as executors and trustees, etc

*Jerome A. Peck*, special guardian for infant grandchildren of Henry G. Trevor.

RICH, J.:

Testator devised his residuary estate to his executors to have and to hold the same in *trust* for the uses and purposes following: The executors are directed to set apart and invest one-third of his personal estate for the benefit of his widow during her l fe, and *upon her death* the corpus to be disposed of for the benefit of *her* children, " by adding the same in equal parts to the several shares " representing *her* children in the residuary estate. After various other provisions, with which we are not concerned upon this appeal, the executors are directed to divide the residuary estate into *four* equal parts or shares, to represent respectively his *four* living children, and to hold and invest each share and apply the income to the support of each child, until such child shall attain twenty-one years, and after such child shall have attained twenty-one years, to apply the whole income of the share representing such child to his use, and when each child arrives at stipulated ages, to wit, twenty-three, twenty-six, thirty-two and forty, fixed portions of the corpus of each share are also directed to be paid over, with discretion in the executors to withhold payment of one-fifth of the corpus of each share during the life of any child.

It is further provided that in the event of any child dying before receiving his full share, *leaving issue*, the issue to take the parent's share, to remain upon trust, however, until such issue attains twenty-one years of age, or in the event of the death of a child *without issue*, the share of the one so dying is directed to be apportioned among the surviv ng children and added to their respective shares.

The trust for the testator's *four* children, as outlined in paragraph " seventh " of his will, has been carried out, and three of his children, together with the children of one who has died, have received their respective shares of the corpus of this trust, upon the theory that each of the *four* children acquired a vested remainder therein. The trust for the benefit of testator's widow, with which we are concerned, has been carried out only to the extent of the widow's life estate, and upon her death, July 22, 1922, testator's son by his first wife brought this proceeding to determine the validity and construction of this portion of the will.

Second Department, January, 1924. [Vol. 207

It is his contention that, in violation of the Statute against Perpetuities, the power of alienation or the absolute ownership with respect to the trust set apart for the benefit of the widow for life, is suspended by the provisions of the will during at least five lives. As a matter of fact, it appears that testator did the thing he intended to accomplish without offending the statute, but the determination of the validity of this trust depends not on what has happened since the death of the testator, but on what might have happened. Chief Judge CULLEN, speaking for the Court of Appeals in *Matter of Wilcox* (194 N. Y. 288, 294, 295), says: "At this point we must recall two elementary principles in determining the validity of wills. *First.* Such validity must be determined not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends not on what has happened since the death of the testator, but *on what might have happened.* * * *"

This will offends the statute, in that the testator directed the suspension of the power of alienation or of the absolute ownership, *first*, for the natural *life of his wife;* upon her death, the principal of her trust was to be added in equal parts to the several shares of *her* children (three) in his residuary estate, which was disposed of by paragraph "seventh" of the will. The shares referred to were directed in that paragraph to be held by his trustees, the income of which was to be applied to the support, maintenance and education of each child representing the shares, until each attained twenty-one years of age, when all accumulations of interest were to cease and be paid over to the several children, and thereafter the entire net income of each share was to be paid over, with payments of principal to each child at stipulated ages, with discretion in the executors to withhold payment of one-fifth of the principal of each share during the life of any of the children represented thereby. This constituted a suspension for a *second life.* In the event of the death of any child, leaving lawful *issue,* such issue are to take the share of the deceased parent, but if such issue shall be an infant under twenty-one, then the share to which such infant is entitled shall be held upon trust during his or her minority. This constitutes a suspension for a minority, which for the purposes of the statute is equivalent to another, or in the case at bar, a *third life.* (*Hayden* v. *Sugden,* 48 Misc. Rep. 108; *Benedict* v. *Webb,* 98 N. Y. 460.) In the event of the death of any child leaving *no issue,* the share of such child is to be added, in equal parts, to the shares of the *surviving* children which under the earlier provisions of para-

graph " seventh " are to be held in trust, *first*, for the lives of the children, and *second*, for the minority of grandchildren.    This creates a possibility of a further suspension for one or two lives, depending upon how many of testator's *three* children by his second wife survived until they reached forty years of age, which might swell the total of lives for which the power of alienation or the absolute ownership is suspended to *five*.    (See 1 R. S. 773, §§ 1, 2; revised by Pers. Prop. Law of 1897, § 2, and Pers. Prop. Law of 1909, § 11. See, also, 1 R. S. 723, §§ 14–16; revised by Real Prop. Law of 1896, § 32, and Real Prop. Law of 1909, § 42.)

The precise question, therefore, presented for decision relates to whether or not, because of these invalid provisions, the cutting-off process is to commence at the end of the widow's life estate, or only the limitations *beyond* the second life. (*Church* v. *Wilson*, 152 App. Div. 844; affd., 209 N. Y. 553.)    Respondents Emily H. Trevor and others assert it to commence at the limitations beyond the second life, and as authority for the contention cite *Church* v. *Wilson* (*supra*), while the appellant says it should commence at the termination of the widow's life estate. (*Matter of Silsby*, 229 N. Y. 396.)

Future estates, to be valid, must be so limited that in every possible contingency they will absolutely terminate at the period prescribed by the statute. (*Matter of Wilcox, supra.*)   Tested by the rule, the provision in the case at bar for a further life estate, causing a further suspension in case one of testator's children should die leaving no issue, undoubtedly violates the statute (*Church* v. *Wilson, supra*), but in that case the court observed that its effect would not be to destroy the entire trust, but only the *limitation beyond* the second life, as to which no valid remainder having been created by the will, there would be an intestacy. Respondents distinguish the *Church Case* (*supra*) from the *Silsby Case* (*supra*), upon which appellant relies, in that it was commenced *after* the death of the widow, the first life tenant, whereas the *Silsby* case was instituted after the death without issue of the *second* life tenant.   Appellant seeks to distinguish the *Church* case, however, on the ground that there the primary and secondary life estates were *vested*, and hence a cross remainder of a third life estate could be cut off to prevent an invalidity, while had the remainder been contingent, it could not have been accelerated or cut off. (*Purdy* v. *Hayt*, 92 N. Y. 446, 452–457; *Dana* v. *Murray*, 122 id. 604, 618.)

I think this is the proper distinction, and that unless it can be determined that both the widow's and her *children's* life estates were vested at the date of testator's death, the cutting off process must begin at the end of the widow's life estate.   Thus in *Simpson*

v. *Trust Co. of America* (129 App. Div. 200; affd., 197 N. Y. 586), where the will is very similar to the one in the case at bar, Mr. Justice SCOTT, writing for the First Department, said: "It is urgently argued on behalf of the appellants that it is unnecessary and improper to apply the cross remainders provided by the will as between the surviving brother and sister, to the share originally set apart for the wife, and directed at her death to be added to the shares set apart for the brother and sister, and it is insisted that the language of the will will be satisfied if the provision for cross remainders be limited to the shares originally set aside for the surviving brothers and sister. A number of well-known cases are cited in support of this contention. (*Beatty* v. *Godwin,* 127 App. Div. 98; *Corse* v. *Chapman,* 153 N. Y. 466; *Everitt* v. *Everitt,* 29 id. 39; *Vanderpoel* v. *Loew,* 112 id. 167.) All of these cases, however, are to be distinguished from the present because there was in each a provision whereby the accrued share *would vest absolutely in some one upon the death of the first or second life tenant.* In the present case no such provision is to be found." That the children's life estates were not vested is clear from the provisions of the "fifth" paragraph of the will, providing that the corpus of the trust for the widow's benefit was not to be added to *her* children's trusts under the "seventh" paragraph *until her death.*

While a most unfortunate result will flow from this conclusion, in that the appellant will receive a share in what testator patently never intended him to have, the duty of this court is to interpret, not to construct, to construe the will, not to make a new one. It is not the duty of the court to strive by a strained construction to uphold the will, but to seek to ascertain the disposition which the testator undertook and intended to make, and having ascertained that, to determine whether or not it is valid. (*Simpson* v. *Trust Co. of America, supra.*)

It follows that that portion of the decree of the Surrogate's Court of Westchester county which sustains the validity of the trust after the life estate of the widow, should be reversed upon the law, and in all other respects affirmed, with a separate bill of costs to the appellant, the executors, and the special guardians, payable out of the fund.

KELLY, P. J., JAYCOX and MANNING, JJ., concur; YOUNG, J., dissents and reads for affirmance.

YOUNG, J. (dissenting):

I agree that the words "as hereinafter provided" relate to the shares subject to the trust and that upon the death of the widow the equal shares in the remainder are added to those shares which

are given to the executors in trust for these same children; in other words, that they are subject to the same trusts. But it seems clear to me that these trusts cease upon the death of each child. Nowhere in the will does the testator in express language subject the remainders after the death of each child to the trusts theretofore created. It is true that the language is somewhat ambiguous, but if it is susceptible of a construction which will vest these sub-shares arising from the death of a child without issue in the surviving children free from the trust, it should be so construed, because in my opinion it carries out the manifest intention of the testator to give these shares to his children and not to d e intestate as to any portion of his estate. It is elementary that such a construction should be given, if possible, which vests the estate and avoids intestacy. When we consider the language of the will that the share of a child dying without issue shall be added to " the shares of my estate representing my other surviving child or children " in connection with the language " it being my intention that the absolute ownership of each share of my estate representing any child or grandchild of mine shall not be suspended except as hereinbefore specified during the single life of the child whom it represents and during the minority of any grandchild," I think the intention to vest these sub-shares absolutely in the surviving children becomes clear, and that such construction should be given as to carry out that intention.

I do not regard the provision directing the executors to hold the share of an infant grandch ld during minority as a suspension of absolute ownership. The language of the will is that the share of a child dying leaving issue " shall belong to and vest in " such issue, but if under twenty-one years, the executors are directed to set apart the share " to which such infant child *will be entitled* at the death of the parent," and hold it during minority, applying the income to its benefit during minority and on such chi'd attaining the age of twenty-one years to pay over to such child the principal, etc. I think this is a case where the gift is absolute and the time for payment only is postponed. The gift is, therefore, not suspended but vests at once upon the death of the parent. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 582.)

In my opinion there is a suspension of absolute ownership during the life of the widow in one-third of the estate. There is a further suspension as to an equal share given to each child, during the life of such child. This constitutes two lives in being. But upon the death of each child, that share vests either in issue or in the surviving children.

I, therefore, vote to affirm.

That portion of the decree of the Surrogate's Court of Westchester county which sustains the validity of the trust after the life estate of the widow, reversed upon the law, and in all other respects affirmed, with a separate bill of costs to the appellant, the executors, and the special guardians, payable out of the fund.